IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TIMOTHY L. BARGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16CV290 |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Timothy Barge ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed his applications for Disability Insurance Benefits and Supplemental Security Income Benefits on August 6, 2013, alleging a disability onset date of

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

October 1, 2010. (Tr. at 26, 195-203.)[2] His applications were denied initially (Tr. at 66-85, 110-14) and upon reconsideration (Tr. at 86-109, 116-24). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 127-28.) Plaintiff, accompanied by his attorney, appeared and testified at the subsequent hearing on October 16, 2015, at which time he amended his alleged onset date to August 30, 2013. (Tr. at 26, 46, 225.) An impartial vocational expert also testified by telephone. (Tr. at 26.)

Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 34.) On February 18, 2016, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-5.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993)

---

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

(quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

4

impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his amended alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

heart disease, including congestive heart failure; asthma; hypertension; chronic low back pain; sleep apnea; and obesity.

(Tr. at 28.) The ALJ found at step three that none of these impairments met or equaled a disability listing. Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff could perform light work, "except that he must avoid concentrated exposure to respiratory irritants and to hazardous conditions." (Tr. at 29.) Based on this determination and the testimony of the vocational expert, the ALJ found at step four of the analysis that Plaintiff could perform his past relevant work as a telemarketer. (Tr. at 33.) The ALJ also made an alternative finding at step five that, given Plaintiff's age, education, work experience, and RFC, he could perform other jobs available in the national economy. (Tr. at 33-34.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 34.)

Plaintiff now contends that the ALJ erred in (1) failing to include peripheral edema and gout among Plaintiff's severe impairments at step two, (2) finding that Plaintiff can perform light work, "particularly in light of the fact that he requires a cane for ambulation," and (3) failing to consider the impact of Plaintiff's obesity on his RFC. (Pl.'s Br. [Doc. #13] at 3.) After careful review of the record, the Court finds that none of Plaintiff's contentions merit remand.

   A.   Severe impairments

Plaintiff first contends that the ALJ erred in failing include peripheral edema and gout among his severe impairments at step two of the sequential analysis. (Pl.'s Br. at 6-8.)

> Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010). If the Commissioner finds no severe impairments, the claimant is not disabled and

6

>the analysis does not proceed to the other steps. Id. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC. See 20 C.F.R. § 404.1523 (2010); SSR 96–8p, 1996 WL 374184, at *5 (1996); SSR 86–8, 1986 WL 68636, at *5 (1986). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. See Thomas v. Commissioner, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).

Rivera v. Astrue, No. CBD-12-1095, 2013 WL 4507081, at *7 (D. Md. Aug. 22, 2013). In other words, "[a]s long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014).

In the present case, Plaintiff testified that he experienced edema as a result of his congestive heart failure, which prevents his body from eliminating fluids normally. (Tr. at 49.) Plaintiff's brief further cites to treatment records regarding his edema, and these treatment records also generally link Plaintiff's edema to his congestive heart failure and hypertension. (Pl. Br. at 7, Tr. at 342, 345, 388-89, 391, 398-400, 420, 579, 632.) The ALJ addressed Plaintiff's hypertension and chronic heart failure at length in determining Plaintiff's RFC, finding that Plaintiff "has a diagnosis of heart failure, but a review of significant developments in his cardiac history shows that his grade III diastolic dysfunction is stable and not disabling." (Tr. at 31.) The ALJ reviewed the results of Plaintiff's echocardiograms, myocardial perfusion study, and stress test, and noted that "[o]n January 9, 2015, Dr. Williamson stated that his

7

grade III diastolic dysfunction was stable and that he did not currently require any medical treatment." (Tr. at 32, 569.) The ALJ also noted that Plaintiff's hypertension was not disabling because medical records show that it was controlled with medication. (Tr. at 32.) Thus, the ALJ addressed the underlying medical conditions in determining Plaintiff's RFC. Moreover, the ALJ also specifically addressed Plaintiff's edema at step two, and found that "the medical evidence shows that the condition can be controlled with diuretic medicines and compression stockings." (Tr. at 29.) As to this finding, Plaintiff contends that "[i]n June 2014, it was noted that plaintiff had not seen improvement in his bilateral leg swelling despite an increased dose of Lasix." (Pl. Br. at 7.) However, Plaintiff's increased edema in May and June of 2014 (Tr. at 497, 494, 491) had begun to respond and improve a few weeks later by July 2014 (Tr. at 490) ("Today he states his legs are better as he wore the stockings yesterday"), and was much better two months later in September 2014 (Tr. at 488) ("Leg edema: He reports that this is much better. Compliant with Lasix 80mg BID, low salt diet, and compression stockings."). A medical record from a year later in July 2015 notes that Plaintiff "[h]as had some swelling in his ankles for a few days after he ran out of lasix about a week ago." (Tr. at 579.) These are the records cited by the ALJ in concluding that Plaintiff's edema could be controlled with diuretic medicines and compression stockings. (Tr. at 29.) Finally, Plaintiff fails to describe any functional limitations attributable to his lower extremity edema. Although he testified that swelling in his hands limited his ability to "use them like [he] used to" (Tr. at 50), the only treatment notes chronicling any issues with Plaintiff's hands predate his alleged onset date (Tr. at 394, 398). These notes further characterize Plaintiff's hand issues as joint pain and swelling, indicating the possibility of an arthritic process, rather than edema. (Id.) In short, the records

8

cited by Plaintiff fail to render the ALJ's step two decision as to peripheral edema unsupported by substantial evidence.

The same holds true for Plaintiff's allegations regarding gout. The record reflects treatment for a single episode of gout in March and April 2015 (Tr. at 477, 480, 482, 589) that had resolved a month later by May 2015 (Tr. at 585). The treatment record from May 2015 notes that Plaintiff "states that gout is much better. He is taking the colchicine twice a day for prophylaxis." (Tr. at 585.) A later reference in January 2016 notes a history of gout that was "stable without acute flare." (Tr. at 632.) Thus, it appears that Plaintiff sought medical treatment for gout only during a brief period in March and April 2015, and any concerns had resolved a month later by May 2015, with no subsequent flares or treatment records.[5] The relatively isolated nature of this condition seriously calls into question whether it qualifies as an impairment "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). This fact alone belies Plaintiff's allegation of error at step two. In addition, as with Plaintiff's edema, he fails to allege any functional limitations resulting from gout. Accordingly, the contention is without merit.

B.  Cane use

Plaintiff next argues that the ALJ's finding that Plaintiff "can perform light work is not based on substantial evidence due to the fact that [Plaintiff] requires a cane for ambulation." (Pl.'s Br. at 10.) Plaintiff notes that under the applicable regulations, "[t]he requirement to use a hand-held assistive device may . . . impact [a claimant's] functional capacity by virtue of the

---

[5] There is also an isolated reference in an earlier July 2014 treatment record noting that Plaintiff reported a "flare of gout which was treated with Naprosyn one week ago," (Tr. at 601), but the records do not reflect any treatment for gout at that time, and there are no other records reflecting any complaint or treatment for gout.

9

fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.00(J)(4). Accordingly, an ALJ must consider the impact of a medically required hand-held assistive device on a claimant's RFC. Notably, SSR 96-9p, on which Plaintiff relies, provides the following guidance:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

1996 WL 374185, at *7.[6] In short, "even if a cane is prescribed, it does not necessarily follow that it is medically required." Wimbush v. Astrue, No. 4:10CV36, 2011 WL 1743153, at *3 (W.D. Va. May 6, 2011); see also Timmons, 2013 WL 4775131 at *8.

Here, as the ALJ noted in his decision, Plaintiff "testified that he uses a cane for walking, but he has not demonstrated that the cane is medically necessary." (Tr. at 32.) Specifically, Plaintiff testified at his October 16, 2015 hearing that he had been using his cane for "about six months" and that he didn't use it every day, "just when [he] plan[ned] on being up on [his] feet a lot." (Tr. at 49.) When asked if a doctor had prescribed the cane, Plaintiff explained that a nurse at the Servant Center, where he lives, had given it to him. (Id.) On January 18, 2016, the nursing supervisor at the Servant Center provided a letter confirming

---

[6] SSR 96-9p explains the impact of an assistive device on an RFC for sedentary work, rather than the light work at issue here. However, courts within this circuit have applied this ruling "to the light occupational base as well, since it involves even greater lifting than sedentary work. . . . Additionally, a plaintiff always bears the burden of proving her RFC, and therefore the standards in SSR 96-9p can be useful in determining if a plaintiff met that burden." Timmons v. Colvin, No. 3:12CV609, 2013 WL 4775131, at *8 (W.D.N.C. Sept. 5, 2013).

10

that Plaintiff "was issued a walking cane by the nursing staff to provide him more stability and safety in walking," and this letter was submitted to the Appeals Council as additional evidence. (Tr. at 5, 628.) However, there is no indication that Plaintiff received medical treatment at the Servant Center or that the cane was medically prescribed. Moreover, Plaintiff contends that he needs the cane due to his back pain, but the ALJ considered the medical evidence regarding Plaintiff's back pain, and determined that

> [h]is allegation of debilitating back pain is not credible because it is inconsistent with his treatment history for degenerative disc disease. His medical records show that his spinal abnormalities are mild, that his doctors have treated his back pain with conservative therapies, and that his pain has improved with physical therapy and exercise.

(Tr. at 31.) The ALJ further reviewed Plaintiff's MRI, which noted mild disc bulges but "[n]one of these are showing any significant spinal stenosis or nerve root entrapment." (Tr. at 31.) The ALJ also have significant weight to the assessment of Dr. Virgili, the State Agency consultant, and the ALJ determined that Dr. Virgili's assessment was

> [c]onsistent with the claimant's activities of daily living, which have included taking vocational classes, doing laundry, walking for six blocks or for a half-mile, doing strength-training exercises at the YMCA, riding public transportation, and attending church.

(Tr. at 32.) Overall, no evidence, including Plaintiff's own testimony, suggests that Plaintiff's occasional, non-prescribed cane use was medically required.

Moreover, the Court notes that this assignment of error is based on Plaintiff's contention that the ALJ "erred in finding that [Plaintiff] has the residual functional capacity to perform light work, particularly in light of the fact that he requires a cane for ambulation, thereby incorrectly applying the Medical-Vocational Guidelines." (Pl. Br. at 8.) Specifically, Plaintiff contends that the ALJ should have limited him to sedentary work, rather than light

11

work, which would have resulted in a finding of "disabled" under the Medical Vocational Guidelines at step five of the sequential evaluation process. However, the ALJ in this case found at step four that Plaintiff was capable of performing his past relevant work as a telemarketer. (Tr. at 33.) In making this determination, the ALJ did not apply the Medical Vocational Guidelines. See 20 C.F.R. 404.1569 (noting that the guidelines in Appendix 2 apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work"); Johnson v. Berryhill, No. 5:16CV682-D, 2017 WL 2894824 (E.D.N.C. Apr. 26, 2017); Kessler v. Astrue, No. 3:11CV321, 2012 WL 3762418, at *7 (D. Nev. May 11, 2012) (agreeing that "because the ALJ properly found that plaintiff could perform her past relevant work, there was no need to apply the Medical Vocational Guidelines at step five."). Here, the Vocational Expert identified Plaintiff's past relevant work as a telemarketer and testified that it was a sedentary position, and the ALJ concluded that Plaintiff could still perform that position as actually and generally performed. (Tr. at 33.) Plaintiff has not attempted to establish that use of a cane would preclude his past work as a telemarketer.[7]

For all of these reasons, Plaintiff's contention that the ALJ "erred in finding that [Plaintiff] has the residual functional capacity to perform light work, particularly in light of the fact that he requires a cane for ambulation, thereby incorrectly applying the Medical-Vocational Guidelines" is without merit.

---

[7] The ALJ did make an alternative finding at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy, but this alternative finding would apply only if Plaintiff could not return to his past relevant work. (Tr. at 33.)

C. Obesity

Finally, Plaintiff contends that the ALJ failed to consider the impact of his obesity on his ability to work. Because obesity may affect a claimant's ability to perform exertional functions, including sitting, standing, walking, lifting, pushing and pulling, as well as postural functions, such as climbing, balancing, stooping, and crouching, an ALJ must consider obesity when assessing a claimant's RFC. SSR 02–1p, 2002 WL 34686281, at *6 (2002). In the present case, the ALJ included Plaintiff's obesity among his severe impairments at step two of the sequential analysis, noting that:

> The claimant is obese. His body mass index was 33.14 in August 2013, and it was 40.71 in July 2014. In a medical note dated January 3, 2014, Dr. Breen, a physician at the Family Practice Center of Moses Cone Hospital (Family Practice), indicated that his obesity affects his other impairments. Specifically, he stated that the claimant's obesity likely exacerbates his back pain, his asthma, and his blood pressure. The undersigned will discuss those and other severe impairments in section five below.

(Tr. at 28, 414.) Thus, the ALJ determined that according to the medical record, Plaintiff's obesity affected his back pain, his asthma, and his blood pressure, and therefore, rather than discussing Plaintiff's obesity separately, the ALJ considered and discussed those impairments that were exacerbated by his obesity: his back pain, his asthma, and his blood pressure. (Tr. at 31-32.)

Plaintiff now argues that the ALJ's failure to specifically discuss the impact of Plaintiff's obesity on his RFC constitutes reversible error. However, no one, including Plaintiff, identifies any unaddressed limitations he believes his obesity causes. See Ely v. Colvin, No. 1:12CV75, 2014 WL 2967913, at *16 (M.D.N.C. July 1, 2014); Cook v. Colvin, No. 1:11CV87, 2014 WL 317847, at *3 (M.D.N.C. Jan. 29, 2014). Moreover, as set out in the ALJ's decision,

neither Dr. Breen nor any other physician ever attributed any independent limitations to Plaintiff's obesity. Rather, Dr. Breen opined that obesity was likely to exacerbate Plaintiff's other severe impairments, including his back pain, asthma, and blood pressure, all of which the ALJ discussed at length when assessing Plaintiff's RFC. (Tr. at 28, 30-32, 414.) In addition, the ALJ assigned significant weight to the assessment of Dr. Frank Virgili, the State agency medical consultant, who recounted Plaintiff's height and weight in conjunction with the medical records throughout the relevant time period and concluded that Plaintiff could perform light work with further environmental limitations, the same RFC ultimately adopted by the ALJ. (Tr. at 89-94.) See Shrewsbury v. Astrue, No. 7:11CV229, 2012 WL 2789719, at *5 (W.D. Va. July 9, 2012) ("The ALJ may rely upon medical records which adequately show a claimant's obesity and adopt the conclusions of doctors who are aware of the claimant's obesity. Similarly, courts in this district have approved of an ALJ's reliance on the opinions of physicians who have considered the claimant and her obesity for purposes of satisfying SSR 02–1p." (citations omitted)). Accordingly, the Court concludes that the ALJ relied on substantial evidence, consistent with SSR 02-1p, in deciding the extent to which Plaintiff's obesity affected his RFC.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc.

#12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 24th day of August, 2017.

/s/ Joi Elizabeth Peake
United States Magistrate Judge